CHARLES SEEBER, Appellant, v. THE PEOPLE'S BUILDING LOAN AND SAVING ASSOCIATION, Respondent.

*False representations — subscription induced by false representations to the stock of a corporation colorably organized under the laws of New Jersey — competency of such representations as evidence — liability of a New York corporation, receiving the money thus subscribed, for money had and received.*

The complaint in an action alleged that the defendant, a New York corporation, through its agents, induced the plaintiff's assignors to subscribe to the stock of a corporation which had been colorably organized under the laws of New Jersey in order to permit the defendant, in violation of the statute, to do business there, upon the false representation that the corporation had been organized in good faith under the laws of New Jersey; that the plaintiff's assignors relied upon such false representation, and that the defendant had knowledge of the falsity thereof.

Upon the trial it appeared that the same persons were respectively president and secretary of both corporations, and that the certificates of stock issued to the plaintiff's assignors were signed by such president and secretary, and bore the seal of the New York corporation; that the person who delivered them to the plaintiff's assignors received them from the defendant, and that the defendant, through the agency of certain persons, received all the money paid upon the subscriptions.

*Held,* that it was error to refuse to allow the plaintiff to show the representations made to induce the plaintiff's assignors to take the stock, as the defendant could not avail itself of the subscriptions, and at the same time avoid responsibility for the representations of the persons by whom they were obtained;

That, independently of the alleged fraud, the case should have been submitted to the jury upon the question whether the defendant was not liable as for money had and received, proof tending to establish that cause of action having been received without objection, although the action was not, in form, brought on that theory— the allegations of the complaint being sufficiently broad to justify the admission of the evidence, even had objection been made thereto.

*Semble,* that to sustain an action for money had and received, whether such money was originally acquired by the defendant lawfully or wrongfully, it is sufficient that the circumstances establish the right to payment on the one side, and the co-relative duty of payment on the other.

APPEAL by the plaintiff, Charles Seeber, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 10th day of November, 1897, as amended by an order, bearing date the 6th day of December, 1897, upon the dismissal of the complaint at the close of the plaintiff's case by direction of the court after a trial before the court and a jury at the Richmond Trial Term, and also from an order, bearing date the 26th day of October, 1897, denying the plaintiff's motion for a new trial made upon the minutes.

*William H. Hamilton* [*William L. Kiefer* with him on the brief], for the appellant.

*Chester M. Elliott,* for the respondent.

WILLARD BARTLETT, J.:

The plaintiff sues as the assignor of seven persons, who, in the year 1891, subscribed for certain shares of stock in a corporation purporting to have been organized under the laws of the State of New Jersey, having its principal and home office at the city of Trenton, in that State, but whose corporate name was "The People's Building Loan and Saving Association of Geneva, N. Y."

It will be observed that this name is the same as that of the defendant in this action (which is a New York corporation) with the exception of the words "of Geneva, N. Y."

The terms of the subscriptions made by the plaintiff's assignors to the stock of the New Jersey corporation required certain monthly and quarterly payments to be made upon each share, and such payments were duly made by the said subscribers, to an amount aggregating $3,224.75, to persons in New Jersey, who assumed to receive the same as agents of the corporation in which the subscribers had become shareholders. The evidence in the case indicates that very little business was ever really done by the New Jersey association after its certificate of incorporation was filed. The certificates of stock which the plaintiff's assignors received were signed by F. B. Covert, president, and D. F. Attwood, secretary. These gentlemen were at the same time, respectively, president and secretary of both corporations. The certificate, however, bore the corporate seal of the New York association. The home office of the New York corporation was first at Geneva and then at Syracuse. In the defendant's books, kept at Syracuse, appeared the names of the plaintiff's assignors as shareholders in the New York association, entered under the respective dates of the various stock certificates which had been issued to them. It was conceded that the certificates, accompanied by pass books, had been sent by the defendant to James C. Beebe, at Trenton, N. J., who delivered them to Henry D. Poole, who, in turn, delivered them to the plaintiff's assignors. These pass books contain entries of payments made by plaintiff's assignors, which they intended for the New Jersey corporation, in which they supposed they had become shareholders. The moneys thus paid all went to the defendant through the agency of Poole, Beebe, or a collector named Charles A. Trimble.

In the course of time the plaintiff's assignors discovered that their money had gone to the defendant instead of going to a corporation organized under the laws of the State of New Jersey, and the plaintiff, who had succeeded to their rights, brought this suit to recover the amounts respectively paid out by them on account of their subscriptions. The theory of the action is that the defendant caused the New Jersey association to be organized colorably as a corporation only for the purpose of fraudulently evading the New Jersey statute, which prohibited the defendant from transacting any business in that State without first making a deposit of money or securities in the sum of $30,000 with the State authorities. The complaint

alleged that the defendant, through agents really employed by it, but pretending to act in behalf of such New Jersey corporation, induced the several assignors of the plaintiff to subscribe to the stock of the New Jersey corporation upon the false representation that the association had been in good faith organized under the laws of New Jersey, and that it was doing business wholly within that State, where all its investments had been made, and would be made, on landed security; that said assignors relied upon such representations in making their subscriptions, and that the representations were, in fact, all grossly false and fraudulent, to the knowledge of the defendant. The plaintiff was not allowed, however, to prove these alleged misrepresentations. The evidence which he sought to introduce for that purpose, not only from the assignors, but from Poole, who is alleged to have made the representations, was excluded. At the end of the plaintiff's case the counsel for the defendant moved to dismiss the complaint upon the ground that there was no proof to show any fraud or false representations upon the part of the defendant. The counsel for the plaintiff then asked the court to submit the case to the jury upon all the evidence, and particularly to submit to them the question as to the defendant's responsibility for the acts and representations of Beebe and Poole, upon the ground that if they found the defendant responsible for such acts and representations they could find against the defendant on the question of fraud. The plaintiff's counsel also asked to go to the jury upon the question as to whether the moneys had not been taken from each of the plaintiff's assignors " under a mistake of fact upon his part, induced by misrepresentations on the part of Mr. Poole and Mr. Beebe, and the defendant having parted with no consideration for the moneys it received, it has converted the moneys, and that the plaintiff being the assignee, could recover at its hands."

I think two errors were committed in the court below, which require us to reverse the judgment. The plaintiff should have been permitted to show what representations were made by Poole as an inducement to the subscribers to take their stock; and even notwithstanding the exclusion of the evidence offered for this purpose, there was still enough proof in the case to require the court to submit to the jury the question whether, independently of the alleged fraud, the defendant was not liable as for money had and received.

Although the suit was not brought in form for money had and received, the proof tending to establish a cause of action on that ground was received without objection ; and, indeed, the allegations of the complaint seem to be sufficiently broad to justify the admission of the evidence, had objection been made. The remedy by action for money had and received has been considerably broadened in modern times, so as to embrace many cases to which it was not formerly applied. Whether the money was originally acquired by the defendant lawfully or wrongfully, it is enough that the circumstances establish the right to payment on the one side, and the correlative duty to pay on the other. This right and duty, says ANDREWS, J., in *Roberts* v. *Ely* (113 N. Y. 128), " create the necessary privity and justify the implication of a promise by the defendant to do that which justice and equity require."

As to the question of fraud in the case, the persons who acted for the defendant in collecting the moneys from the plaintiff's assignors, which moneys found their way directly into the defendant's treasury, must certainly be deemed its agents for some purposes. The defendant could not avail itself of the subscriptions and, at the same time, avoid responsibility for the representations of the persons by whom they were obtained. (*Fairchild* v. *McMahon*, 139 N. Y. 290.)

The judgment should be reversed.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.